Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY COOK, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ADAMAS PHARMACEUTICALS, INC., DAVID L. MAHONEY, NEIL F. MCFARLANE, MICHAEL F. BIGHAM, MARTHA J. DEMSKI, WILLIAM ERICSON, JOHN MACPHEE, SPYROS PAPAPETROPOULOS, and ANNA RICHO, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Kelly Cook ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's

complaint against Defendants (defined below), alleges the following based upon personal

knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other

matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.     This is an action against Adamas Pharmaceuticals, Inc. ("Adamas" or the

"Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Adamas by Supernus Pharmaceuticals, Inc. ("Supernus").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Adamas common stock.

7.      Defendant Adamas focuses on the discovery, development, and commercialization of medicines for patients suffering from chronic neurologic disorders in the United States. The

Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ADMS."

8.      Defendant David L. Mahoney ("Mahoney") is Chairman of the Board of the Company.

9.      Defendant Neil F. McFarlane ("McFarlane") is Chief Executive Officer and a director of the Company.

10.     Defendant Michael F. Bigham ("Bigham") is a director of the Company.

11.     Defendant Martha J. Demski ("Demski") is a director of the Company.

12.     Defendant William Ericson ("Ericson") is a director of the Company.

13.     Defendant John MacPhee ("MacPhee") is a director of the Company.

14.     Defendant Spyros Papapetropoulos ("Papapetropoulos") is a director of the Company.

15.     Defendant Anna Richo ("Richo") is a director of the Company.

16.     Defendants Mahoney, McFarlane, Bigham, Demski, Ericson, MacPhee, Papapetropoulos, and Richo are collectively referred to herein as the "Individual Defendants."

17.     Defendants Adamas and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

18.     On October 11, 2021, Adamas and Supernus announced that they had entered into a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash, payable at closing plus two non-tradable contingent value rights collectively worth up to $1.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent

part:

### Supernus Pharmaceuticals to Acquire Adamas Pharmaceuticals Strengthening its CNS Product Portfolio

October 11, 2021 06:30 ET | Source: Supernus Pharmaceuticals, Inc.

- Acquisition of two marketed products diversifies and accelerates revenue and cash flow
- Expected to be significantly accretive in 2022
- Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure
- Total consideration up to $9.10 per share. Upfront cash payment of $8.10 per share with fully diluted equity value of approximately $400 million, plus $1.00 contingent value right based on net sales of GOCOVRI®
- Conference call and webcast today at 8:30 a.m. ET to discuss the transaction

ROCKVILLE, Md. and EMERYVILLE, Calif., Oct. 11, 2021 (GLOBE NEWSWIRE) -- Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of approximately $450 million). The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI® of $150 million in any four consecutive quarters between closing and the end of 2024. The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025. The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.

The transaction will provide Supernus with two marketed products: GOCOVRI (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and Osmolex ER® (amantadine) extended release tablets, approved for the treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patients.

*     *     *

### Terms and Financing

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable

at closing plus two non-tradable CVRs. All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs). These milestones include (i) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (ii) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million. There can be no assurance any payments will be made with respect to the CVR.

**Approvals and Timing of Close**
The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock. Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

\*       \*       \*

**Advisors**
Jefferies LLC is acting as the exclusive financial advisor to Supernus. Lazard is acting as the exclusive financial advisor to Adamas. Saul Ewing Arnstein & Lehr LLP is serving as legal counsel and Grant Thornton is providing due diligence services to Supernus, and Cooley LLP is serving as legal counsel to Adamas.

\*       \*       \*

**About Supernus Pharmaceuticals, Inc.**
Supernus Pharmaceuticals is a biopharmaceutical company focused on developing and commercializing products for the treatment of central nervous system (CNS) diseases.

Our diverse neuroscience portfolio includes approved treatments for epilepsy, migraine, ADHD, hypomobility in Parkinson's disease, cervical dystonia and chronic sialorrhea. We are developing a broad range of novel CNS product candidates including new potential treatments for hypomobility in Parkinson's disease, epilepsy, depression and rare CNS disorders.

For more information, please visit www.supernus.com

**About Adamas Pharmaceuticals**
At Adamas our vision is clear – to deliver innovative medicines that reduce the
burden of neurological diseases on patients, caregivers and society. We are a fully
integrated company focused on growing a portfolio of therapies to address a range
of neurological diseases.

19.     On October 25, 2021, Defendants caused to be filed with the SEC a Schedule 14D-

9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the

"Solicitation Statement") in connection with the Proposed Transaction.

**B.  The Solicitation Statement Contains Materially False and Misleading Statements
and Omissions**

20.     The Solicitation Statement, which recommends that Adamas shareholders tender

their shares in connection with the Proposed Transaction, omits and/or misrepresents material

information concerning: (i) Adamas' financial projections; and (ii) the financial analyses

performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in

connection with its fairness opinion.

21.     The omission of the material information (referenced below) renders the following

sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of

the Adamas Board; (ii) The Adamas Board's Reasons for the Offer and the Merger; (iii) Opinion

of Adamas's Financial Advisor; and (iv) Projected Financial Information.

22.     The tender offer in connection with the Proposed Transaction is set to expire at

12:00 midnight, New York Time, on November 24, 2021 (the "Expiration Date"). It is imperative

that the material information that was omitted from the Solicitation Statement be disclosed to the

Company's shareholders prior to the Expiration Date to enable them to make an informed decision

as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender

offer or the Proposed Transaction unless and until the material misstatements and omissions

(referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff

may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Adamas' Financial Projections

23.     The Solicitation Statement omits material information concerning Adamas' financial projections.

24.     With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (1) all line items underlying the Company's financial projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection Proposed Transaction.

26.     When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

27.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Lazard's Analyses**

28.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Lazard.

29.     The Solicitation Statement fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (2) the estimated net cash of Adamas at September 30, 2021; and (3) the number of fully diluted Company shares outstanding as of October 8, 2021.

30.     With respect to Lazard's "*Premia Paid Analysis*," the Solicitation Statement fails to disclose each transaction and the individual premiums paid therein.

31.     The Solicitation Statement fails to disclose the following concerning Lazard's "*Research Analyst Price Targets*" analysis: (1) the individual price targets observed by Lazard in its analysis; and (2) the sources thereof.

32.     The valuation methods, underlying assumptions, and key inputs used by Lazard in rendering its purported fairness opinion must be fairly disclosed to Adamas

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Nov. 2, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

shareholders. The description Lazard's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Adamas shareholders are unable to fully understand Lazard's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

33.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34.    Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

35.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

36.    Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce,

solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

37.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

38.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

39.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

40.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

41.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

43.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

44.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

45. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

46. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

47. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

48. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

49. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

11

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

54.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 2, 2021                                  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*